UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOHN DOE,

                     Plaintiff,

            -against-

COLGATE UNIVERSITY, COLGATE UNIVERSITY
BOARD OF TRUSTEES, JEFFREY HERBST,
individually and as agent for Colgate University,
SUZY M. NELSON, individually and as agent for
Colgate University, KIMBERLY TAYLOR,
individually and as agent for Colgate University,
MARILYN RUGG, individually and as agent for
Colgate University, VALERIE BROGAN,
individually and as agent for Colgate University,
and TAMALA FLACK, individually and as agent
for Colgate University,

                     Defendants.
-----------------------------------------------------------------------X

Civil Action No: 5:16-CV-0072 (GLS/TWD)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO PROCEED UNDER
<u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN DOE,

                    Plaintiff,

        -against-

COLGATE UNIVERSITY, COLGATE UNIVERSITY
BOARD OF TRUSTEES, JEFFREY HERBST,
individually and as agent for Colgate University,
SUZY M. NELSON, individually and as agent for
Colgate University, KIMBERLY TAYLOR,
individually and as agent for Colgate University,
MARILYN RUGG, individually and as agent for
Colgate University, VALERIE BROGAN,
individually and as agent for Colgate University,
and TAMALA FLACK, individually and as agent
for Colgate University,

                    Defendants.
------------------------------------------------------------------------X

Civil Action No:

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER

Plaintiff John Doe, ("Plaintiff") by his attorneys, Nesenoff & Miltenberg, LLP, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with his future endeavors, and inflict further harm. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint. *See* Declaration of Tara J. Novack, Esq. ("Novack Decl.") attached to Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

### The Night of February 4-5, 2015 (the "Incident")

On the evening of February 4, 2015, Plaintiff went to a bar in Hamilton to have a few beers and hang out with his friends. He spent approximately one hour there before heading to a friend's apartment where he consumed two to three more beers. Around 12:30 a.m., Plaintiff and his friend, G.G., decided to go to the Old Stone Jug (hereinafter, the "Jug"). Upon entering the Jug, the two friends each ordered a drink from the bar and proceeded to engage in conversation.

Shortly after Plaintiff's arrival at the Jug, Jane Doe approached him to introduce herself. After a few minutes of talking, she put her arm around him and led Plaintiff onto the dance floor, where she began to dance with him. Jane Doe "grind danced" with Plaintiff and kissed him several times during the half hour they spent together on the dance floor.

At approximately 1:00 a.m., Plaintiff and Jane Doe mutually decided to leave the Jug for the night. Prior to departing from the bar, Jane Doe checked in with one of her friends to let her know that she was leaving the bar with Plaintiff. After being asked if she was "sure about going [to John Doe's townhouse]," Jane Doe clearly and coherently replied that she was "fine" and she "wanted to [go to John Does townhouse]." Jane Doe and Plaintiff walked the short distance to the nearest campus shuttle stop, outside of the campus bookstore, and waited approximately 15-20 minutes for the shuttle to pick them up. They passed the time by listening to music and kissing each other several more times.

When the campus shuttle arrived, Plaintiff and Jane Doe sat down in the seat together and continued to kiss. Plaintiff noticed that Jane Doe did not get off the shuttle at her stop on campus,

2

but instead chose to remain on the shuttle with Plaintiff and accompany him back to his townhouse.

When they arrived at Plaintiff's residence, they exited the shuttle together and walked to Plaintiff's townhouse. There, Jane Doe used the restroom before meeting Plaintiff in his bedroom.

Once in Plaintiff's room, Jane Doe and Plaintiff resumed kissing. Plaintiff climbed onto his lofted bed and helped Jane Doe onto the bed with him. They began to mutually disrobe each other and Jane Doe assisted Plaintiff to remove her pants by repositioning herself and wiggling her legs out of them.

As they continued to kiss and mutually touch each other, Jane Doe commented that she was a virgin. Despite advising Plaintiff of her sexual inexperience, she continued to touch Plaintiff, and actively participate in the sexual encounter.

Plaintiff performed oral sex on Jane Doe for several minutes, during which Jane Doe both verbally and nonverbally expressed her consent and enjoyment. Subsequently, without any insistence by Plaintiff, Jane Doe proceeded to perform oral sex on Plaintiff for several minutes. Jane Doe then asked Plaintiff if he had a condom, at which point he got out of bed, retrieved one from his drawer, put the condom on and then returned to bed.

The two thereafter engaged in sexual intercourse, utilizing several different sexual positions in order to make Jane Doe as comfortable as possible. Jane Doe was an active and willing participant during the entire encounter and did not express at any time, in words or actions, that she did not consent.

When they finished having sexual intercourse for the first time, Jane Doe got up to use the restroom. A few minutes later, she returned to Plaintiff's bedroom and jumped back into bed with Plaintiff.

Plaintiff suggested they try having intercourse with Jane Doe on top, as this position might be more comfortable for her. Jane Doe agreed, sat up and guided herself on top of Plaintiff as he lay on his back.

Recognizing that Plaintiff had not climaxed after several minutes, Jane Doe proceeded to initiate oral sex on Plaintiff for a second time. However, when Jane Doe's repeated attempts proved unsuccessful, Plaintiff advised that he was done and wanted to go to sleep. Jane Doe got out of bed and went to the bathroom for a third time, before again returning to bed with Plaintiff and falling asleep for several hours.

When Plaintiff awoke later in the morning, around 10:00 a.m., he discovered that Jane Doe had already left. He was disappointed that he had accidentally slept too late into the morning and was unable to drive her home as he had intended.

On February 6, 2015 at approximately 11:40 p.m., Jane Doe submitted a complaint of sexual misconduct against John Doe to Defendant Brogan.

Prior to learning that a complaint had been filed, Plaintiff received a No Contact Order on behalf of Jane Doe via email on February 7, 2015.

On April 2, 2015, nearly two months later, and after participating in two investigative interviews, John Doe received a charge letter identifying the nature of the allegations against him for the first time.

A hearing on the charges proceeded before the EGP on April 16, 2015 (the "Hearing"). Thereafter, on April 17, 2015, Defendant Taylor issued a decision letter, finding John Doe

4

responsible for all charges (the "Decision"). As a result, Defendants assessed to John Doe a sanction of disciplinary expulsion with respect to the Incident (the "Sanction"). The Decision and the Sanction had the purpose and effect of permanently expelling John Doe from Colgate a month before the completion of his junior year.

During Colgate's disciplinary process, defendants: (i) failed to conduct a thorough and impartial investigation; (ii) improperly advised and advocated on behalf of Jane Doe; (iii) evidenced a gender bias against John Doe as the male accused throughout the investigative and hearing process; (iv) made assessments of credibility and evidentiary weight with respect to each party without any logical basis or rationale; (v) failed to afford John Doe the requisite presumption of innocence required by a preponderance of the evidence standard; and (vi) assessed a Sanction that was unwarranted and disproportionate in light of the circumstances, all of which demonstrated substantial procedural errors in violation of Title IX, the Fourteenth Amendment and other federal and/or state laws.

In Colgate finding that Plaintiff was "responsible" for violating Colgate's policies, Plaintiff was deprived of the most basic due process and equal protection rights and was discriminated against on the basis of his male sex. As a result of Colgate's acceptance at face value of the accusations made by Jane Doe, defective procedures throughout the investigation and hearing process, and disproportionate assessment of punishment, Plaintiff's reputation is tarnished, his educational future is blocked and his career prospects are ruined.

Colgate's Sanction of expulsion has not only terminated his undergraduate education, but has also left a stain on his record that will limit his choices to obtain his Bachelor of Arts degree at another institution.

As a result of Colgate's actions, Plaintiff's parents' financial resources used to provide Plaintiff with an education at an esteemed four-year institution have been squandered.

As a result of Colgate's actions, Plaintiff's academic and disciplinary records are irrevocably and irreversibly tarnished and will not withstand scrutiny by transfer to any other educational institution, including graduate studies.

As a result of Colgate's actions, Plaintiff's entire academic career has been ruined. Moreover, his overall economic future is completely compromised without a college degree.

Without appropriate redress, the unjustified Sanction will continue to cause irreversible damage to Plaintiff.

Plaintiff seeks redress from this Court to undo the wrongs occasioned by Colgate to his education and future.

In light of these facts, Plaintiff should be permitted to protect his identity by filing the Complaint under a pseudonym. Plaintiff is prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## ARGUMENT

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1068 (9th Cir. 2000). The Second Circuit has articulated a non-exhaustive list of factors to consider when conducting this balancing test: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to

6

proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Doe v. Cuomo*, No. 10-CV-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. 2013). As outlined below, a balancing of these factors leads to the inevitable conclusion that Plaintiff must be permitted to proceed anonymously in this litigation.

### A. The litigation involves matters that are highly sensitive and of a personal nature.

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being falsely linked to an allegation of sexual misconduct. In fact, numerous courts around the country have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously. *See*

7

*e.g. John Doe v. Columbia University and Trustees of Columbia University,* 2014 WL 6471520 (S.D.N.Y. 2014); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Univ. of Massachusetts-Amherst,* 2015 WL 4306521 (D. Mass. 2015); *Doe v. Univ. of S. Florida Bd. of Trustees,* 2015 WL 3453753 (M.D. Fla. 2015); *Doe v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Montana,* 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing to Does I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct.

**B. Disclosure of Plaintiff's identity would result in significant harm to Plaintiff.**

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type which he seeks to remedy by the commencement of this lawsuit. Specifically, even if Plaintiff were ultimately exonerated and his records expunged, the disclosure of his name would nonetheless significantly hinder his ability to pursue future career and educational endeavors, including graduate studies, as any entity or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was falsely accused of sexual misconduct. It is widely recognized that the likelihood of acceptance as a transfer student to an undergraduate program of equal caliber to Colgate, or to a top tier graduate program, is significantly reduced in light of the high number of applicants and stiff competition, let alone the social stigma associated with being

found responsible and expelled for "sexual misconduct," regardless of whether the decision is ultimately overturned as a result of litigation. Based on the foregoing, John Doe should be permitted to proceed anonymously as requiring him to reveal his identity would result in significant harm to John Doe, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

### C. Defendants will not be prejudiced by allowing Plaintiff to proceed pseudonymously.

Further, Plaintiff should be permitted to proceed anonymously as defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder defendants in any way.

### D. There is a weak public interest in knowing Plaintiff's identity.

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e. defendants violated Plaintiff's right to fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing

9

Plaintiff's identity, as his challenges to Colgate's biased and unfair investigatory process concerns a larger association than the interest of an individual plaintiff; it affects the male student population at Colgate as a whole. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

While in the past, courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the Internet today is such that any plaintiff is readily accessible via a simple online search; thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded violations as the present one. Here, if Plaintiff were required to reveal his name, even if Plaintiff were to succeed on his claims against defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action.

There is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted, as it will still know what is alleged to have occurred that resulted in charges of sexual misconduct being filed, as well as the flawed process by which the defendants investigated and adjudicated those charges. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Dated: New York, New York
       January 18, 2016

>                 Respectfully submitted,
>
>                 NESENOFF & MILTENBERG, LLP
>                 *Attorneys for Plaintiff John Doe*
>
>                 By: _____
>                 Andrew T. Miltenberg, Esq. (511014)
>                 Tara J. Novack, Esq. (*admission pending*)
>                 363 Seventh Avenue, Fifth Floor
>                 New York, New York 10001
>                 (212) 736-4500
>                 amiltenberg@nmllplaw.com
>                 tnovack@nmllplaw.com

11